**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER SADOWSKI, | Case No. 1:24-cv-00064-JGK |
| Plaintiff, | |
| v. | |
| MEDIAITE, LLC, | |
| Defendant. | |

**DEFENDANT MEDIAITE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF CHRISTOPHER SADOWSKI'S AMENDED COMPLAINT PURSUANT TO F.C.R.P. 12(b)(6)**

PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law in support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint, dated April 12, 2024, the exhibits attached hereto, and upon all the papers and proceedings previously had in this matter, Defendant respectfully moves this Court before the Honorable John G. Koeltl, United States District Court for the Southern District of New York, at the United States District Courthouse, 500 Pearl Street, New York, NY 10007, for an Order dismissing Plaintiff Christopher Sadowski's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted on the ground that defenses exist upon documentary evidence, together with such other and further relief as the Court deems just and proper.

## Table of Contents

INTRODUCTION ..................................................................................................1

STANDARD OF REVIEW ......................................................................................2

FACTUAL BACKGROUND ...................................................................................4

ARGUMENT ...........................................................................................................6

   I.     PLAINTIFF'S CLAIMS ARE MERITLESS AS DEFENDANT'S USE OF THE PHOTO CONSTITUTES FAIR USE ................................................................6

      a.   Defendant's Use of the Photo Was for a Transformative, News Reporting Purpose ................................................................................................. 8

      b.   The Factual and Published Nature of the Photo Favors Fair Use ..........................10

      c.   Defendant Did Not Use Any More of the Photo Than Necessary for Fair Use ......12

      d.   Defendant's Use Does Not Usurp the Market for Plaintiff's Work ........................13

   II.    DEFENDANT'S USAGE OF THE PHOTO ENCOMPASSED A SCREENSHOT OF THE PHOTO AS SHOWN IN A FOX NEWS VIDEO, AND THEREFORE DOES NOT CONSTITUTE COPYRIGHT INFRINGEMENT....................................................15

   III.   DEFENDANT'S USAGE OF THE PHOTO DID NOT AMOUNT TO WILLFUL INFRINGEMENT ................................................................................................16

   IV.   IT IS COMMON PRACTICE FOR ESTABLISHED MEDIA OUTLETS TO UTILIZE SCREENSHOTS OF VIDEOS AS FAIR USE AND RULING AGAINST SUCH PRACTICES WOULD IMPEDE NEWS ORGANIZATIONS FROM DELIVERING TIMELY AND CRITICAL NEWS TO THE PUBLIC……………….... 16

CONCLUSION ......................................................................................................17

## Table of Authorities

Cases

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
    598 U.S. 508 (2023)……………………………………………………… 11-12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................2, 3

*Authors Guild v. Google Inc.*,
    804 F.3d 202, 214 (2d Cir. 2015) ...........................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 433 (2007) ...........................................................................2, 3

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006) ..............................................................7, 12

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006) .........................................................9, 10, 12

*Cali v. Chrysler Group, LLC*,
    426 Fed. App'x. 38 (2d Cir. 2011) .........................................................3

*Cole v. John Wiley & Sons, Inc.*,
    2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012)...........................................4

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) .................................................................8, 9, 12, 14

*Capitol Records, LLC v. ReDigi Inc.*,
    910 F.3d 649 (2d Cir. 2018) .................................................................14

*Cariou v. Prince*,
    714 F.3d 694 (2d Cir. 2013) .......................................................9, 12, 14

*Castle Rock Entm't, Inc. v. Carol Publ. Group, Inc.*,
    150 F.3d 132 (2d Cir. 1998) .................................................................14

*Ferdman v. CBS Interactive Inc.*,
    342 F. Supp. 515 (S.D.N.Y. Sept. 21, 2018) ....................................10, 15

*Giammatteo v. Newton*,
    452 Fed. App'x. 24 (2d Cir. 2011) .........................................................3

*Harper & Row Pub., Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985) ................................................................................16

*Hughes v. Benjamin*,
    437 F. Supp. 3d 382 (S.D.N.Y. 2020) ...................................................7

*Marano v. Metropolitan Museum of Art*,
    844 Fed. App'x. 436 (2d Cir. 2021) ................................................7, 13

*Marvullo v. Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000) ...................................................3

*Mathieson v. Associated Press*,
    1992 WL 164447 (S.D.N.Y. June 24, 1992) ...................................8, 12

*North Jersey Media Group Inc. v. Pirro*,
    74 F. Supp. 3d 605 (S.D.N.Y. Feb. 10, 2015) ................................ 10-11

*NXIVM Corp. v. Ross Institute*,
    364 F.3d 471 (2d Cir. 2004) ...................................................................7

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
    98 F.3d 2 (2d Cir. 1996) .........................................................................3

*Ritani, LLC v. Aghjayan*,
    970 F. Supp. 2d 232 (S.D.N.Y. 2013) ...................................................4

*Sarl Louis Feraud Int'l v. Viewfinder, Inc.*,
    627 F. Supp. 2d 123 (S.D.N.Y. 2008) .................................................12

*Schwartzwald v. Oath Inc.*,
    2020 WL 5441291 (S.D.N.Y. Sept. 10, 2020) ....................................15

*Smith v. City of New York*,
    2013 WL 1903856 (S.D.N.Y. May 8, 2013) ..........................................2

*Swatch Grp. Mgmt. Servs. v. Bloomberg, L.P.*,
    742 F.3d 17, 89 (2d Cir. 2014) .............................................................12

*TCA Television Corp. v. McCollum*,
    839 F.3d 168 (2d Cir. 2016) ............................................................7, 13

*Walsh v. Townsquare Media, Inc.*,
    464 F. Supp. 3d 570 (S.D.N.Y. 2020) ...........................................10, 15

*Wright v. Warner Books, Inc.*,
    953 F.2d 731 (2d Cir. 1991) ...................................................................................8

*Yang v. Mic Network Inc.*,
    2022 WL 906513 (2d Cir. Mar. 29, 2022)........................................................7, 15

Secondary Sources

Ivan O. Taylor Jr., *Video Games, Fair Use and the Internet: The Plight of the Let's Play*,
2015 U. ILL. J.L. TECH. & POL'Y 247, 259 (2015)……………………………………..… 16

Melissa Eckhause, *Fighting Image Piracy or Copyright Trolling? An Empirical Study of
Photography Copyright Infringement Lawsuits*, 86 ALB. L. REV. 111, 121 (2022)….. 16-17

Statutes

17 U.S.C. § 107 .........................................................................................................1, 6, 7

17 U.S.C. § 501 .............................................................................................................1, 5

Rules

Federal Rule of Civil Procedure 12(b)(6)................................................................ 1-4, 6-7

Defendant Mediaite, LLC ("Mediaite" or "Defendant") respectfully requests that the Court dismiss Plaintiff Christopher Sadowski ("Plaintiff")'s Amended Complaint pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6), for failure to state a claim upon which relief can be granted in its entirety.

## **INTRODUCTION**

Plaintiff Christopher Sadowski, an individual claiming legal and rightful ownership over the materials at issue in this case (*see* Plaintiff's Amended Complaint, ECF Doc. No. 18, ¶ 1, 6 & 13) (hereinafter "Plaintiff's Amended Complaint" or "Plaintiff's Complaint"), has insufficiently set forth claims alleging that Defendant engaged in willful copyright infringement of one (1) photograph (the "Photo"), as shown in one (1) editorial article on Mediaite discussing media coverage of an overnight flight carrying migrant children from Texas to New York (the "Mediaite Article"). Specifically, Plaintiff alleges that Defendant has engaged in copyright infringement pursuant to 17 U.S.C. § 501 by infringing Plaintiff's right to reproduce, distribute, and publicly display his work. While Defendant does not deny utilizing the Photo in an article, Plaintiff's copyright infringement claim fails because Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted, as required by the Federal Rules of Civil Procedure.

First, Plaintiff's claims must fail as Defendant's use of the Photo constitutes as fair use. The use of Plaintiff's Photo in the Mediaite Article fits into the categorical "news reporting" and "commentary" examples of fair use enumerated in the Copyright Act. 17 U.S.C. § 107. Further, the Mediaite Article is transformative; while Plaintiff alleges that he created the Photo to document an event as part of his career as a photojournalist, Defendant's use was for an article specifically discussing and critiquing the media response to the transportation of migrant children in the New York area in the middle of the night via airplane, adding an entirely new context and form of data

1

to the Photo. The other fair use factors similarly favor Defendant, with the Photo only being entitled to limited protection as a factual and journalistic piece of work; Defendant having only used as much of the Photo as necessary to serve its transformative purpose; and the use not having significantly harmed any potential market Plaintiff may be engaged in. Second, many courts in the Southern District of New York have deemed screenshots of videos as prime examples of fair use and not as copyright infringement. Third, Plaintiff's willful infringement claim lacks merit as Defendant's use was not only done innocently and in total good faith, but such use was necessary to deliver timely news to the public, a purely journalistic purpose which precluded willful infringement as fair use. Fourth, public policy and media industry practices support utilizing screenshots of videos for news reporting purposes.

For these reasons and those discussed in greater detail herein, Plaintiff's Amended Complaint should be dismissed.

## **STANDARD OF REVIEW**

This Court may grant a motion to dismiss pursuant to F.R.C.P. Rule 12(b)(6) where the complaint fails to state a claim upon which relief should be granted ("Rule 12(b)(6)"). "To survive a Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 433, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Moreover, a "plaintiff must allege 'more than a sheer possibility that a defendant acted unlawfully'" and a "complaint that offers only 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Smith v. City of New York*, 2013 WL 1903856, *2 (S.D.N.Y. May 8, 2013) (granting defendant's Rule 12(b)(6) motion)). This

standard has been upheld by the Second Circuit for years. *See Giammatteo v. Newton*, 452 Fed. App'x. 24 (2d Cir. 2011) (upholding lower court's dismissal of plaintiff's complaint pursuant to Rule 12(b)(6)); *Olkey v. Hyperion 1999 Term Trust, Inc*., 98 F.3d 2, 9 (2d Cir. 1996) (upholding the lower court's dismissal, stating that "dismissal under Rule 12(b)(6) is appropriate because 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations'"); *Cali v. Chrysler Group, LLC*, 426 Fed. App'x. 38 (2d Cir. 2011) (upholding the lower court's dismissal of plaintiff's claim pursuant to Rule 12(b)(6)).

Moreover, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and Plaintiff must allege sufficient facts to "nudge their claims across the lien from conceivable to plausible." *Bell Atl. Corp.*, 550 U.S. at 570 (2007) (dismissing plaintiff's complaint for failure to state a claim under rule 12(b)(6)). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (holding the plaintiff failed to plead sufficient facts to survive a Rule 12(b)(6) motion to dismiss). Plaintiff must do more than allege bare legal conclusions with no factual support to survive a motion to dismiss pursuant to Rule 12(b)(6).

Courts in this circuit have granted Rule 12(b)(6) motions to dismiss when it is clear that the face of the complaint alleging copyright infringement fails to meet the standards set by the Federal Rules of Civil Procedure. *See Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 233 (S.D.N.Y. 2000) (granting defendant's Rule 12(b)(6) motion to dismiss, as the court noted plaintiff's allegations of direct copyright infringement suffered from "...fatal defects, including of vagueness and conclusoriness..."). When there are no facts supplied in a plaintiff's complaint regarding the actions alleged (particularly in regard to copyright infringement claims), courts in

this circuit have dismissed such pleadings in their entirety, in accordance with Rule 12(b)(6). See *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *17 (S.D.N.Y. Aug. 1, 2012) (dismissing plaintiff's amended complaint entirely, as "Plaintiff has pleaded no facts capable of showing that Wiley's alleged fraudulent acts...led to any direct and proximate loss...that would have been caused by Wiley's copyright infringement"); *Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 262 (S.D.N.Y. 2013) (upholding aspects of lower court's dismissal pursuant to Rule 12(b)(6), stating that "Ritani, however, offers no facts supporting the conclusory allegation that any alleged loss of sales resulted from any wrongful conduct by Aghjayan, or that Aghjayan even possessed confidential information or used such information inappropriately").

When courts within this circuit have determined that a plaintiff's complaint fails to provide sufficient factual contentions and to state a claim upon which relief can be granted, that warrants dismissal of the pleading in its entirety.

## **FACTUAL BACKGROUND**

Mediaite, a news website focusing on politics and media founded in 2009 by television host and ABC News' Chief Legal Analyst, Dan Abrams, has been reporting on events, individuals, and matters of the public interest for fifteen years. Per Plaintiff's Amended Complaint, Plaintiff, Christopher Sadowski, is an individual claiming to be "a professional photographer who specializes in photo-documenting ordinary life and the human condition," taking "photographs that tell a story about tragedy, hope, calamity, joy, discord and renewal" that he licenses online. Plaintiff's Amended Complaint, ECF Doc. No. 18, ¶ 6-11. At issue in this case is a photograph Plaintiff took of migrant children exiting a plane after being flown from Texas to New York in the middle of the night in October 2021 (the "Photo"). *Id.* at ¶ 12. Plaintiff registered the Photo with the Copyright Office and licensed the Photo to multiple other news outlets, including the New

York Post and Fox News for publication within articles and news segments covering the flight. *See id.* at ¶ 13-16. The New York Post article, entitled "Biden secretly flying underage migrants into NY in dead of night," was published on October 18, 2021. *Id.* at ¶ 15. Fox News published multiple articles and video segments using the Photo on television in October 2021. *Id.* at ¶ 16.

The Photo was published by Mediaite on October 21, 2021, in the editorial article entitled "Migrant Children Being Flown in the Night to New York is a Story, Despite Psaki and the Media's Efforts to Ignore It," available at the URL: https://www.mediaite.com/opinion/migrant-children-being-flown-in-the-night-to-new-york-is-a-story-despite-psaki-and-the-medias-efforts-to-ignore-it/ (the "Mediaite Article"). *See* Plaintiff's Amended Complaint, ECF Doc. No. 18 at pp. 3. The Mediaite Article discussed migrant children being flown from Texas to New York overnight, but also focused primarily on the press coverage (or lack thereof) regarding the event. More specifically, the Mediaite Article noted that coverage of the flight was limited to "right-wing media outlets," opining that the lack of "legacy media" coverage (e.g., the *New York Times*, the *Washington Post*, *CNN*) was "inexcusable," given the event's newsworthiness, and also discussed the Biden administration's handling of these events. *Id*. As an example of a publication that covered the flight, the Mediaite Article included a screenshot of a Fox News video segment that happened to include the Photo—the Photo was never displayed as a standalone photograph in the Mediaite Article, only as a part of the Fox News segment. *Id*. Moreover, because the Photo appeared as part of the Fox News video segment, it did not appear in its original form – rather, the Photo appeared with text, additional graphics, and other logos from Fox News on it, therefore altering it even further.

Plaintiff filed its Amended Complaint in this action on March 4, 2024, alleging that Defendant violated its exclusive rights granted by 17 U.S.C. § 501 "by reproducing, distributing,

and publicly displaying the Work for its own commercial purposes." *See* Plaintiff's Amended Complaint, ECF Doc. 18, ¶ 27-33. Defendant received permission to file a motion to dismiss for failure to state a claim pursuant to the amended Complaint under F.R.C.P. Rule 12(b)(6) by April 12, 2024 (ECF Doc. No. 17). It is clear the usage of the Photo does not constitute copyright infringement and that dismissal of these claims is warranted, due to the fact that 1) Defendant's utilization of the Photo constitutes fair use; 2) Defendant's usage of the Photo via a screenshot of a separate video deems the usage as not copyright infringement; 3) Defendant's usage of the Photo was not willful infringement; and 4) public policy and industry standards support utilization of screenshots for news reporting purposes.

In sum, dismissal of Plaintiff's Amendment Complaint is entirely warranted for the reasons detailed within.

## ARGUMENT

### I.  PLAINTIFF'S CLAIMS ARE MERITLESS AS DEFENDANT'S USE OF THE PHOTO CONSTITUTES FAIR USE

As a copyright owner, Plaintiff enjoys certain exclusive rights, but these rights are not absolute – when a Defendant's usage of materials constitutes as fair use (as is the case here), such utilization is permissible by law. Specifically, the Copyright Act states that "the fair use of a copyrighted work, including such use … for purposes such as criticism, comment, [or] news reporting … is not an infringement of copyright." 17 U.S.C. § 107. Defendant's use of the Photo constitutes fair use, primarily because Defendant's usage of the Photo falls directly within the news reporting, commentary, and criticism exception of fair use enumerated in the Copyright Act. Further, the four factors courts utilize when determining fair use all weigh in favor of Defendant.

The Second Circuit "has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim" on a Rule 12(b)(6) motion. *TCA Television Corp. v.* McCollum, 839 F.3d 168, 178 (2d Cir. 2016). Accordingly, this court has considered fair use when granting a defendant's Rule 12(b)(6) motion to dismiss by comparing the allegedly infringing work described in the complaint with the original, and the Second Circuit has affirmed dismissal on these grounds. *See, e.g.*, *Yang v. Mic Network Inc.*, 2022 WL 906513, *1, *3 (2d Cir. Mar. 29, 2022); *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 395 (S.D.N.Y. 2020); *Marano v. Metropolitan Museum of Art*, 844 Fed. App'x. 436, 439 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 213 (2021).

When determining whether the use of a work constitutes fair use, courts examine four factors provided by the Copyright Act: (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. Courts examine all four factors separately and balance them together "in light of the purposes of copyright," with no single factor being entirely dispositive. *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006); *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 479 (2d Cir. 2004). If the factors weigh in favor of a fair use finding (e.g., a majority of the factors are met), then the use at issue is considered fair use, and typically dismissal of the pleading is granted. *See Yang*, 2022 WL 906513 at *1, *3.

In this instance, Defendant's utilization of Plaintiff's photo constituted fair use, as all four factors of the fair use doctrine have unquestioningly been met to the extent that Plaintiff's Amended Complaint cannot possibly state a plausible claim for copyright infringement. As such,

as permitted by both the Copyright Act and New York case law, dismissal of the Complaint is warranted.

### a.  Defendant's Use of the Photo Was for a Transformative, News Reporting Purpose

Regarding the first factor, which examines the purpose and character of the use of the work in question, "the enquiry focuses on whether the new work merely supersedes the objects of the original creation, or whether and to what extent it is transformative, altering the original with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Mathieson v. Associated Press*, 1992 WL 164447 (S.D.N.Y. June 24, 1992). Section 107 of the Copyright Act specifically enumerates news reporting, commentary, and criticism as protectable fair use, and the Second Circuit has held that "if a [work] falls into one of these categories […] assessment of the first fair use factor should be at an end." *Wright v. Warner Books, Inc.*, 953 F.2d 731, 737 (2d Cir. 1991). The Mediaite Article was about the issue of migrant children being flown overnight from Texas to New York, but also about the media's response and coverage of that issue, as well as the Biden administration's handling of it. Specifically, it reported on the disparity between the newsworthiness of the event and the lack of coverage from mainstream media outlets, highlighting the limited coverage of the event. As such, the purpose of the use was journalistic, contrasting the newsworthiness of the Photo and the events it depicted with the actual press attention it garnered. Moreover, the Mediaite Article was published days after the New York Post and Fox News articles were published, with the non-Mediaite articles generally published on October 18-19, 2021, and the Mediaite Article published on October 21, 2021. Mediaite is a website focused solely on reporting events in the media and political spheres in real time, with a sincere mission to provide news on critical issues in a timely manner. Thus, its timely reporting of the media response to the overnight flight of migrant children (after coverage by other outlets like

New York Post and Fox News) is precisely the entire purpose of Mediaite as a whole, and therefore strengthens the position that the use was for news reporting purposes.

Moreover, the use of the Photo is transformative. A use is transformative if it "communicates something new and different from the original or expands its utility." *Authors Guild v. Google Inc.*, 804 F.3d 202, 214 (2d Cir. 2015). The Second Circuit has observed that "[t]he law imposes no requirement that a work comment on the original or its author in order to be considered transformative…." *Cariou v. Prince*, 714 F.3d 694, 706 (2d Cir. 2013) *cert. denied*, 571 U.S. 1018 (2013). Rather, a use is transformative as long as it "adds something new, with a further purpose or different character." *Campbell*, 510 U.S. at 579. For example, in *Blanch v. Koons*, the Second Circuit held that a visual artist made a transformative use of a copyrighted picture of a woman's legs and glittery Gucci sandals. 467 F.3d 244, 251-53 (2d Cir. 2006). The artist copied the image, originally intended to communicate a sexualized, glamorous lifestyle, and included it in a collage painting as part of an artistic commentary on the banality of mass media. *Id*. The court found that the purpose of the collage was distinct from the original work, and the use was thus found to be fair.

Here, Plaintiff did not plead his purpose for taking the Photo, but most likely created the Photo and licensed its use as part of his career "photo-documenting ordinary life and the human condition," depicting "tragedy, hope, calamity, joy, discord and renewal", as stated in his complaint. The Mediaite Article serves a different purpose: covering and critiquing the media response specifically to the event depicted in the Photo. The Mediaite Article thus adds new information about the overnight flight by contextualizing it in the public consciousness, providing new context to the Photo and presenting it in a different light from its original intention as documentation of a newsworthy event. Defendant did not use the Photo as a generic illustrative

aid regarding the issue of migrant children being transported via flights, but used the Fox News segment containing the Photo as the subject of reporting and commentary. Indeed, the fact that Mediaite utilized the ways the Photo was being represented and reported on by Fox News serves as even further proof that the usage of the Photo was not just to discuss the issue of migrant flights in general, but more specifically to discuss the media's coverage of this issue, rather than the photo/issue itself. Again, fair use applies "where the copyrighted work is itself the subject of the story, transforming the function of the work in the new context." *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 581 (S.D.N.Y. 2020) (citation and internal quotation marks omitted).

### b. The Factual and Published Nature of the Photo Favors Fair Use

The second factor, which analyzes the nature of the copyrighted work, considers "(1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch v. Koons*, 467 F.3d at 256 (citation omitted). The second factor favors Defendant because the Photo is a work of fact and published, and thus does not warrant additional protection.

First, the Photo is factual and informational. Even on the face of Plaintiff's Amended Complaint, it is clear that the Photo is a non-fictional image, taken in real-time, that documents a newsworthy event. Photographs of public events, even those that are historical and newsworthy, are generally deemed more factual than expressive. *See Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 515, 538 (S.D.N.Y. Sept. 21, 2018) (finding a copyrighted image taken in a spot accessible to the general public supported fair use because the "[p]laintiff was photographing the events around him as they occurred") & *North Jersey Media Group Inc. v. Pirro*, 74 F. Supp. 3d 605, 620 (S.D.N.Y. Feb. 10, 2015) (holding that a photojournalist's photograph of firefighters during 9/11

raising an American flag near the ruins of the World Trade Center was factual in part because the photographer "did not create the scene or stage his subjects—to the contrary, he plainly acknowledged that the photograph 'just happened'"). This is particularly true when the original photograph was taken specifically for news-gathering purposes. *See id:* ("While there can be no dispute that [the photographer] exhibited great artistry in carrying out his task [...] there can also be no dispute that the Work is a quintessential example of photojournalism."). Further, Plaintiff would have had very little creative control over the selection of the subject matter, as the Photo was taken i) outdoors in an uncontrolled environment, ii) in the middle of the night and from a considerable distance, and iii) the circumstances surrounding the Photo reveal that Plaintiff did not have direction or a say in any aspects of the Photo, including lighting of the scene or the posing and positioning of the subjects.

Some courts in this circuit have pointed to the recently decided case law of *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023), in which the Supreme Court of the United States found that fair use was not present, as the works at issue shared a similar purpose in the depiction of the two photos of musical artist Prince. While this is newly issued case law regarding the matter of fair use, Defendant respectfully avers that it is inapplicable to the case at hand: i) firstly, the works at issue in that matter were artistic in nature, as they involved creative portraits of a famous musician, which greatly differs from the work in this case, which constituted of a screenshot of a small portion of a video depicting the news-worthy issue of migrant children leaving an airplane, which is as non-creative as a work can get, and ii) the court viewed the purpose of the works similar in the *Warhol* matter, whereas here the purposes of the usage of the Photo differ; while Plaintiff took the photo for the purpose of documenting the action in real time, Defendant utilized the Photo to comment on the Photo itself, but to discuss the wider issues of

immigration and how the media covered such a matter. As a result, Defendant is of the position that the *Warhol* precedent is inapplicable in this instance.

As pleaded in Plaintiff's Amended Complaint, the image is a real-time documentation of an event, rather than an expression for the photographer's creative vision.

### c. Defendant Did Not Use Any More of the Photo Than Necessary for Fair Use

The third factor, which looks at the amount and substantiality of the original work used, considers whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying. *Swatch Grp. Mgmt. Servs. v. Bloomberg, L.P.*, 742 F.3d 17, 89 (2d Cir. 2014) (quoting *Campbell*, 510 U.S. at 586); *Blanch*, 467 F.3d at 257. It is well-established in this Court that "a commentator may fairly reproduce as much of the original, copyrighted work as is necessary to his proper purpose." *See Mathieson*, 1992 WL 16447, at *8; *Bill Graham Archives*, 448 F.3d at 613 (finding fair use even though the photographs at issue were "reproduced in their entirety"); *Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 627 F. Supp. 2d 123, 133 (S.D.N.Y. 2008) ("[T]he Second Circuit has found that entire reproductions can be justifiable where the purpose of the secondary work differs from the original."). This is particularly true for transformative works, which "must be [permitted] to 'conjure up' at least enough of the original' to fulfill its transformative purpose." *Cariou*, 714 F.3d at 710 (quoting *Campbell*, 510 U.S. at 588). Firstly, Defendant used the Photo as depicted in the Fox News segment, which did not even use the Photo in its original form, as it included additional graphics and text, covering up the lower portions of the work. Second, Defendant used the Photo to comment on the lack of news coverage of migrant children being flown to New York from Texas, despite the newsworthiness of the event. It was necessary for Defendant to include excerpts of news coverage, including the Photo to help readers understand what the commentary of the outlets that were covering the event consisted of and juxtapose the newsworthiness of the event with the lack of mainstream coverage. It would have

12

been impossible for Defendant to even publish the Mediaite Article without usage of the Photo, as the entire article itself 1) was commenting on the actual Photo, as that was the only way to depict the issue of migrant children leaving on planes and 2) utilized the Photo to discuss the wider issue of immigration and press coverage. Indeed, the first sentence of the Mediaite Article discusses what the Photo itself depicts, stating: "Thousands of migrant children have reportedly been flown in the middle of the night from Texas to New York." *See*, Plaintiff's Amended Complaint, ECF Doc. No. 18 at pp. 3. The purpose of the Mediaite Article itself was to discuss not just the Photo, but how the media was covering the overall topic – as a result, showing how the Photo was being shown by a media outlet such as Fox News was critical. Usage of the entire Photo was necessary in order for Defendant to fulfill its transformative purpose, and therefore, this factor should be deemed to weigh in favor of the Defendant as well. Accordingly, displaying the Photo in the Mediaite Article was necessary for readers to understand the article's content—the extent of media coverage of the migrant children's flight, or lack thereof.

### d.  Defendant's Use Does Not Usurp the Market for Plaintiff's Work

The fourth and final factor in the fair use analysis, the effect of Defendant's use on the market for the Photo or its derivatives, strongly also weighs in favor of Defendant, warranting dismissal of Plaintiff's Amended Complaint. In the Second Circuit, the fourth factor requires courts to consider "whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *See Marano*, 472 F. Supp. at 87 (finding fair use and stating that courts are of the position that "the more transformative the secondary use, the less likelihood that the secondary use substitutes for the original"); *TCA Television Corp.*, 151 F. Supp. 3d at 434 (dismissing plaintiff's claims entirely, finding fair use was present and stating that "it was unlikely that a reasonable observer of the new

work would find that […] reenactment […] could usurp the market for the original […] performance of the Routine"). Further, other courts have stated: "Factor Four is necessarily intertwined with Factor One; the more objective of secondary use differs from that of the original, the less likely it will supplant the commercial market for the original." *Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018). As alleged, Plaintiff's Amended Complaint does not allow any plausible inference that a potential licensee could have received from the Mediaite Article what they would have received by licensing the Photo from Plaintiff. It is implausible that any person who considered purchasing a license for the Photo decided not to do so merely because it is included within the text of the Mediaite Article to accompany a larger, more in-depth piece. Further, as the Supreme Court held in *Campbell*, where the secondary use is transformative, the possibility of market harm is lessened. *See Campbell*, 510 U.S. at 591; *see also Cariou*, 714 F.3d at 709 ("'the more transformative the secondary use, the less likelihood that the secondary use substitutes for the original'") (quoting *Castle Rock Entm't, Inc. v. Carol Publ. Group, Inc.*, 150 F.3d 132, 145 (2d Cir. 1998). As discussed previously, Defendant's use was quintessentially transformative, not just using the Photo as a visual illustration of its subject matter, but reporting on the image itself as part of a news story that is itself a matter of public interest. The Mediaite Article discussed the pieces of media for which the Photo was licensed, showing the Photo as part of its commentary and news reporting. Finally, nowhere in Plaintiff's Complaint has Plaintiff outlined what specific monetary drawbacks, loss of revenues, or decrease of business revenue or deals he suffered as a result of the Mediaite Article. Accordingly, the fourth factor favors fair use. Upon balancing all four fair use factors, the Court should find that the fair use defense appears on the face of Plaintiff's Amended Complaint and dismiss the action.

II.    **DEFENDANT'S USAGE OF THE PHOTO ENCOMPASSED A SCREENSHOT OF THE PHOTO AS SHOWN IN A FOX NEWS VIDEO, AND THEREFORE DOES NOT CONSTITUTE COPYRIGHT INFRINGEMENT**

Additionally, Defendant's usage of the Photo does not constitute as copyright infringement, as courts in New York have ruled that a screenshot of a video is further evidence of fair use, particularly when it is utilized for news reporting purposes. *See*:

> *Yang*, 2022 WL at *543: "First, it is clear from the face of the Mic Article that it was using the Screenshot to identify the subject of the controversy…and to illustrate why the article has been controversial. Using a portion of an original work to identify and inform viewers about the subject of a controversy can constitute transformative use… For example, a 'news report about a video that has gone viral on the Internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about.'"

*See* similarly: *Walsh*, 464 F.Supp.3d at 570 (granted defendant's Motion to Dismiss and found fair use): "Courts have also found fair use in cases in which a website published a screenshot of an article from another publication that contained a copyrighted photograph, alongside criticism of the article."; *Ferdman*, 342 F.Supp.3d at 515 (granted defendant's summary judgment motion); & *Schwartzwald v. Oath Inc.,* 2020 WL 5441291, *4 (S.D.N.Y. Sept. 10, 2020) (deeming fair use present: "Oath contends that its use of the Photograph was transformative because the superimposed text box, photo caption, title, and broader context of the article fundamentally transformed the character and purpose of the use... For example, a 'news report about a video that has gone viral on the Internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about.'") Similarly in this instance, Defendant utilized a screenshot of the Photo as it appeared in a Fox News video, and therefore that serves as further evidence the usage was supported by fair use and does not constitute infringement.

III.   **DEFENDANT'S USAGE OF THE PHOTO DID NOT AMOUNT TO WILLFUL INFRINGEMENT**

While Plaintiff's Amendment Complaint primarily warrants dismissal due to the fair use doctrine, Plaintiff's claims are further weakened by the fact that Defendant's use of the Photo as it appeared in the Fox News segment was innocent and made in total good faith, in order to provide the public with timely news, as it has done for more than a decade. Bad faith exists where the use "had not merely the incidental effect but the *intended* purpose of supplanting the copyright holder's commercially valuable right of first publication." *Harper & Row Pub., Inc. v. Nation Enterprises*, 471 U.S. 539, 540 (1985). Plaintiff's Amended Complaint insufficiently claims that Defendant's use was willful as it does nothing more than advance threadbare allegations of the same. Moreover, courts have found that a claim of willful infringement cannot stand where a defendant believes in good faith that their conduct is innocent, which is the case here. Thus, Plaintiff's claims that Defendant willfully infringed his copyright in the Photo merits dismissal, as Defendant at all times believed and still believes its use was innocent and made in good faith pursuant to the news reporting exception to the Copyright Act.

IV.   **IT IS COMMON PRACTICE FOR ESTABLISHED MEDIA OUTLETS TO UTILIZE SCREENSHOTS OF VIDEOS AS FAIR USE AND RULING AGAINST SUCH PRACTICES WOULD IMPEDE ORGANIZATIONS FROM DELIVERING TIMELY AND CRITICAL NEWS TO THE PUBLIC**

In addition to guiding mandatory case law, which permits taking screenshots of a video for the purposes of fair use, especially for news reporting purposes, a significant amount of legal and public policy exists for advocating for such usage as well. Many scholars, attorneys, and legal experts have opined that being able to utilize content in this matter is required in order to provide breaking, timely, and critical news to the deserving public. *See*: "… the games' representations in screenshots are merely inanimate slivers. In the third factor, the Court found towards fair use as screenshots were a small amount of the video game." Ivan O. Taylor Jr., *Video Games, Fair Use*

*and the Internet: The Plight of the Let's Play*, 2015 U. ILL. J.L. TECH. & POL'Y 247, 259 (2015) & "Courts typically find fair use in cases where the photograph itself was the story, and the publisher is reporting on a story that arose because of the copyrighted image." Melissa Eckhause, *Fighting Image Piracy or Copyright Trolling? An Empirical Study of Photography Copyright Infringement Lawsuits*, 86 ALB. L. REV. 111, 121 (2022-2023). Preventing journalism outlets from being able to utilize screenshots of videos in order to deliver timely news would create a dangerous slippery slope in the world of media, as anytime there is copyrightable footage on a cable news show, no organization would then be able to accurately cover such an event. The entire premise of Mediaite is that it is an outlet which focuses on the intersection of politics and the media, and it comments on how other media outlets (particularly cable news channels and stations) cover major political figures and events. Secondly, such a potential effect would not only negatively impact the media outlets covering such content, but would also deprive the general public of the timely and accurate news coverage it so desperately deserves, particularly regarding such an important topic as politics. Lastly but not least, Mediaite is hardly the only news outlet to utilize screenshots of a portion of a video in order to deliver a more in-depth and timely piece of journalism to its readers. In fact, countless outlets feature screenshots of viral and news-worthy videos in their articles to report on such events. *See* **Exhibit A** for examples of reputable outlets such as AOL and Business Insider, to name a few, who have employed screenshots in order to conduct their important journalistic work. Utilizing screenshots accordingly for purposes of fair use and news reporting is supported not only by case law, but public policy and standards in the media industry, serving as further support of Defendant's Motion to Dismiss.

## <u>CONCLUSION</u>

For all of the aforementioned reasons, Defendant respectfully asks the Court to dismiss Plaintiff's Amended Complaint with prejudice, as Defendant's usage of the Photo is entirely

supported by (i) the doctrine of fair use, (ii) the fact that Defendant's utilization of the Photo was a screenshot of the Photo as shown in a video by a separate outlet, (iii) the fact that Defendant's usage of the Photo did not constitute willful infringement, and (iv) significant public policy and media industry standards support utilizing screenshots for news reporting purposes.

Respectfully submitted,
*/s/ Elizabeth Vulaj*
Elizabeth Vulaj, Esq.
*Business & Legal Affairs & Counsel for Defendant*
Mediaite, LLC
1261 Broadway, Sixth Floor
New York, NY 10001
Tel.: 646-370-1258
E-Mail: elizabeth@abrams-media.com

*/s/ Delia Thornton*
Delia Thornton, Esq.
*Business & Legal Affairs & Counsel for Defendant*
Mediaite, LLC
1261 Broadway, Sixth Floor
New York, NY 10001
Tel.: 646-370-1258
E-Mail: delia@abrams-media.com

**TO (VIA ECF):**
Daniel DeSouza, Esq.
954-603-1340
DeSouza Law, P.A. and CopyCat Legal PLLC
3111 N University Dr Ste 301
Coral Springs, FL 33065-5058
Phone:
Email: ddesouza@desouzalaw.com